May it please the court, counsel, my name is CeCe Ibson. United Healthcare and I had a contract. In March of 2004, we entered into a written contract, according to which United was to provide health insurance coverage for my family, in exchange for which I was to pay premiums. I performed. It's undisputed that I paid my premiums beginning in March 2004 and continuing through to June 1, 2008, when I secured coverage with another carrier. United Healthcare did not perform. On October 1, 2007, United Healthcare unilaterally, without cause and without notice, terminated my family's health insurance coverage. Not only did they decline coverage going forward, they actually went backwards and demanded and received refunds of money paid out on claims in 2006 and 2007. United Healthcare admits they did not notify me that termination was imminent. Indeed, they did not notify me at all. I learned we'd been terminated five months after the fact, in February 2008, when my son's pediatrician refused to see him, unless and until I came into their office with cash to pay off a stack of old bills that United had returned as not covered. The problem here was not that United Healthcare was denying benefits for certain services under the terms of an otherwise enforced policy. The problem is United Healthcare terminated our contract. Could I ask you a question about the policy that you just mentioned? Did you pay premiums directly to UHS on this policy, or how was your premiums taken care of? Your Honor, I was a shareholder in a law firm in Des Moines, Iowa, and as a shareholder, I was responsible for paying my family's premiums in their entirety. But who wrote the check? Did that come from the firm, or did you write a check to UHS? The firm collected premium from each of the shareholders, and then we wrote one check to United Healthcare, which, by the way, I signed back in those days. That was my job as an officer in the firm. So these payments were made along with the payments for other employees and other shareholders to UHS, who had this, what, one policy issued to the firm? Is that the way it worked? It was a little more complex than that, Your Honor, but also a little more simple. We provided benefits for employees, and as the record reflects, in my first year with the firm, I actually was an employee of the firm, and as an employee, I was entitled to benefits, I'm trying to focus on this policy. Did UHS issue a policy directly to you, or was the policy issued to the firm, and your coverage and benefits and so forth were part of that policy? No, no. I got my own policy. I mean, United Healthcare sent me a policy. United Healthcare sent me a policy. The only thing my law firm did was to collect premiums from the shareholders, which included our premiums, by the way, and, of course, as a shareholder, I paid my proportionate share of all the employee benefits. The policy said you were the policy holder. I am the policy holder. Okay. That's what I'm trying to- All right. And it is from- What we're here on is the statute of limitations, and the question I have, and this is probably more for the insurance company, but I'm going to ask you, you have a three-year statute of limitations, which probably under Iowa is a reasonable limitation, but when I read the policy in the second paragraph, where it talks about within three years of, well, I note, I scribble notes, it says within three years of, quote, our final decision, end of quote, I don't see anything in here about any, that the company ever issued a final decision, but I also don't see that you raised that issue. And the issue is, well, the statute has not even begun to run, begin to run, whatever the correct medical term is. And in theory, I don't disagree with that. There actually are two orders, Your Honor. You know, the first order is the order striking my jury demand on the grounds that my claims are ERISA preempted. That's why we have to start there because, of course, I didn't plead ERISA. UnitedHealthcare invoked federal question jurisdiction- Well, but even under Iowa law, I mean, ERISA's adopting Iowa law. Iowa law, you got the same type of situation. By contract, you can limit the statute of limitations if it's reasonable, and probably it's reasonable under Iowa law. So the question is, when did it start? Has it started running? No. Your Honor, I think actually it has not started running, and here's why. I don't believe that statute of limitations applies to my claims at all because that policy, by its own terms, says that their contractual limitation period applies in two contexts, okay? Number one, where suit follows UnitedHealthcare's refusal to provide benefits for services obtained from out-of-network providers. That was never an issue here. Or number two, where UnitedHealthcare has denied benefits under the terms of a policy exclusion. Again, not applicable here. Those are not my claims. So I don't believe, whether the contractual limitations period is reasonable or unreasonable, I just think has no bearing at all in my case. My case is about their unilateral termination of coverage in its entirety, not the denial of benefits for certain services not covered under an otherwise enforced policy. Ms. Ibsen, before we can measure the statute of limitations, we have to know, don't we, whether you have asserted an ERISA claim or a state law claim. And what do you allege that you have asserted? A state law claim? State law claims, Your Honor. I do not, I'm not bringing this suit to recover benefits under an ERISA regulated plan. I believe that ERISA doesn't apply at all. Number one, UnitedHealthcare says they're not the plan administrator in this case. And so the ERISA preemption, you know, ERISA is designed to regulate the administration of plans. But issues like contract formation, performance, termination, liability, remedies, those are all ERISA benefits, but to remedy the damage that was done to me and my family by UnitedHealthcare's unilateral breach. But the Supreme Court has a whole bunch of cases. It's cases that involve law firms where the firm pays the premiums, even though it's yours, that it's too difficult to sort this all out. And so they have said they reach an ERISA claim more broadly than usual. So you're sure that on the facts that you have as to the policy that's in play here and how it's paid and so forth, that you, that this is not part of an ERISA plan? Absolutely certain of that, Your Honor. And here's the evidence of record below. First of all, remembering that it was UnitedHealthcare that's invoking federal question jurisdiction, so the burden is on them. But in the record below are three affidavits, one from me and one from two other former shareholders in the Smith Law Firm, that address with great specificity precisely the questions you're asking. How were things handled financially? What role, if any, did the Smith Law Firm play in the administration of this plan? And the answer is absolutely none. Also in the record are two contracts. My first contract, whereby I was an employee and I was entitled to paid employee benefits, including paid health insurance by my firm. And the second contract, which is absolutely silent on that point. And then the other evidence of record being, of course, that we did not provide benefits for ourselves. And indeed, Your Honor, this plan was voluntary. In the first couple of years of my relationship with the firm, I didn't participate in the plan. I didn't participate at all. We used my late husband's health insurance. I want to get to... Let me follow up with that a minute. Because ERISA adopts state law and statute of limitations, what difference does it make here, you know, if we're just deciding the statute of limitations, what difference does it make whether it's ERISA or not ERISA? Well, Your Honor, you aren't, as I understand it, just deciding the statute of limitations. We wouldn't have gotten to that. But for the trial court's first order on July 15th of 2013 that said my claims were ERISA preempted. And then in the court's second order, the statute of limitations order and summary judgment in August of 2013, the trial court starts from the presumption that my claims are ERISA claims. Well, I understand. I've read all those orders. But if it's not an ERISA claim, you still have the Iowa statute of limitations or the Iowa law that says you apply a contractual statute of limitations if it's reasonable. So you're right back to the same place. You're looking at the contract that says three-year statute of limitations. Assuming that statute of limitations apply to claims of the nature of those presented in this case, Your Honor, and it does not. And that's UnitedHealthcare's language, not mine. It says very clearly it applies to Section 5 claims. Those are claims where you seek services from an out-of-network provider. You have to get preapproval. And that was a point you made earlier. Right. Exactly. And then the Section 6 claims, Your Honor. So that would apply either whether it was ERISA or not ERISA. That's going to apply. That's right. Your claims don't fall under that contractual provision. That's exactly it. They would apply anyway, but they don't apply to my claims. But Iowa has a 10-year statute of limitations on breach of contract. Correct. But the Iowa law also permits by contract to shorten it. It does. And so if you have a separate contract with them that shortens it, how is that different than the Well, ERISA says that you can adopt a state statute of limitations. We know that, which would be 10 years if it weren't for this contractual limitation period. But again, Your Honor, I maintain that contractual limitation period doesn't apply to my claims. This isn't about out-of-network services. This isn't about a policy exclusion. It's about a blanket declination of coverage of a termination going forward and a reclaiming benefits paid out historically to the inception of the policy period. And that is a matter of state law. The subject matter of this contract doesn't matter. What matters and from which liability arises is the relationship of the parties. And that relationship is a matter of contract. I'm going to stop there at this point and reserve further comments for rebuttal. Okay, you may. And we'll turn to Mr. Blumenkopf. Good morning. Good morning. Jay Blumenkopf, Gonzales-Saggio for UnitedHealthcare. Just to clarify something Ms. Ibsen said, this was not an individual policy. This was a group policy entered into between UnitedHealthcare and the enrolling group. And that is appendix page 34. The enrolling group was the law firm. You can raise that if you want. So if this isn't an ERISA policy, Ms. Ibsen may have some good arguments that the limitations in the policy do not limit her 10-year statute of limitation under Iowa case law? No, under Iowa case law, a contractual limitation period is valid and enforceable as long as it's reasonable and set forth in the policy. This is a classic ERISA plan, but even... I'm sorry. Subject to exceptions. And she says that she falls within some of the exceptions to that. I don't understand what the exception is that she falls. Well, she's arguing that the three-year limitation in the policy only applies to certain things like denial because of exclusions and so forth. And it's not a catch-all for every claim under the policy. That's number one. I'd like to address that. And then number two is, has the limitation even begun to run? Begin to run? Because you talk about it being within three years after our final decision, and I don't see in the file that any final decision was made. You can certainly correct me if I'm wrong. There are two statute of limitation paragraphs in the policy. The first one is three years after a claim is submitted. You have a year to submit the claim. Then you have another three years after that to file a lawsuit. Then below that is the catch-all provision says that you have an outside limit of three years from when we make our final decision. The final decision was made on April 4, 2008. There was a series of emails that begins in the appendix at page 192 in which Ms. Ibsen realized that funds had been recouped, claims had not been paid, and through Tailored Benefits, the employee benefits company that represented the law firm, she appealed those claims. On April 4, there's an email opinion from UnitedHealthcare's service department saying what they would do to fix that problem. The problem was not fixed right away, and here's why the issues arose. First, Ms. Ibsen, who enrolled as an employee of the law firm, signed a document certifying to the truth of all the information in there, but it had the wrong Social Security number. Down the road under the policy, if UnitedHealthcare discovered that there was false information, it had a right to terminate the certificate of coverage of one of the participants under the group policy and recoup benefits. That's what it did. Do I believe they handled it in the best possible way? Should they have notified her first in the world of best behavior? Yes, but it did what it was entitled to do under the policy, and then it went to correct that, and that decision is in the April 8 email from UnitedHealthcare to Tailored Benefits, which was then forwarded to Ms. Ibsen, and UnitedHealthcare stated exactly what it would do to fix the situation. Unfortunately, healthcare providers subsequently submitted claims under the old ID number, and they weren't paid. So there was, unfortunately, a comedy of errors here. There was no nefarious activity, and it started with all the wrong Social Security number that Ms. Ibsen certified was correct. Did UnitedHealthcare make mistakes as well? Yes, but the truth is this is a classic employee welfare benefit plan. The Smith Schneider Law Firm enrolled 16 of its 17 full-time employees. It represented, certified as being true that it was paying 90% of the premiums. This is a law firm. There are cases that law firms may pay the premiums. They did. ERISA clearly governed. The complaint here, Ms. Ibsen says she's not seeking any kind of damages for healthcare benefits. The very complaint in this action. Under that policy? No, but under this ERISA policy. She says she's not in ERISA. Well, the United States Supreme Court says she doesn't have to plead ERISA under Pilot Life and Metropolitan Life v. Taylor. If you don't plead ERISA, they automatically recharacterize as ERISA if they are ERISA claims. But what does Ms. Ibsen allege in her complaint? That this policy of insurance existed? That UnitedHealthcare breached it? This is page 5 and 6 of the appendix. That she suffered damages in the form of healthcare-related bills and expenses? That is a claim under a group health insurance policy for ERISA benefits. Precisely what she claims. She's not asserting in this action. The next claims are for bad faith, negligence, and punitive damages. United States Supreme Court says punitive damage and extracondructional damages are unavailable. The circuit has said the same thing. They're preempted, right? They are preempted. If it is an ERISA plan, if she has an ERISA plan, they may not be preempted. If it is not an ERISA plan, they are not preempted. In the Eighth Circuit's decision in Northwest Airlines v. Federal Insurance to qualify as an ERISA plan, a reasonable person must be able to ascertain the benefits, the class of beneficiaries, the source of financing, and a procedure for receiving benefits. Here are the benefits of the medical expense benefits, the class of beneficiaries of the eligible employees of Smith-Schneider, and depending on whether it's 16 of 17 of those employees enrolled. The procedures for receiving benefits are set forth in the policy, and the purchase of a commercial policy is an acceptable way to establish an ERISA plan. Smith-Schneider represented a paid 90% of the premiums. The policy meets every requirement of an ERISA plan as set forth by the United States Supreme Court and followed by the circuit. And the circuit has said in Parkman v. Prudential that common law tort claims are preempted even those for the processing of ERISA benefits. That's what happened here. It was the processing of ERISA benefits. Yes, there were false starts. Yes, we recouped benefits. But ultimately, and it's a judicial admission in our brief, Ms. Simpson says there are no more benefits due. Okay, now, we're here really because of the statute, the three-year statute of limitations. I'm not sure your September 4th email rises to a final decision. I'd like you could address that further. It doesn't sound like a final decision. But here's my question. Did the plaintiff ever raise that issue that the statute of limitations had not begun to run? No. Has she always treated it as that it was running and that it didn't apply in an Iowa law is 10 years? She has always treated it as the Iowa statute applies. Do we have the authority to, even without the raising of the issue, to say or maybe we always have authority to do it, but should we raise it for and say, well, you know, there never was a final decision. The statute is not even running today. Well, I disagree as to whether or not that is a final decision. Of course, you have the ultimate decision here. The ultimate final decision. The ultimate final decision here. I do this all the time. And that constitutes a final decision in the world of ERISA. So maybe that's something that has to be determined by the lower court again. I don't think so. And it has never been raised. So you say you do this ERISA all the time. You think that email is enough to be a final decision? It sounded to me like it still was a negotiation of trying to resolve something that was a problem that everybody didn't do. And well, what else could be done if it acknowledges that a problem was made and it said, here's what we're going to do to fix everything that you've raised. What more can UnitedHealthcare do to make that a final decision? How many, how much of Ms. Ibsen's claim have not been paid? I mean, what's the quibble over here? I'm sorry. Most of it was for her husband who unfortunately passed away. And I'm sorry, I don't have the amount right now off the top of my head. But there is some outstanding medical bills that have not been paid under the ERISA policy? To my knowledge, no. And some of that may be because on the death of her ex-husband, it was written off by medical providers, but her bills and the children's bills were paid as far as I know. And Ms. Ibsen claims in her brief that there's nothing due in owing. So if she has any damages coming, it would have to be under these state law claims that have been recited that you say are preempted? That's correct. That would be the only possible route to damages. Now, just for clarification, it's my understanding that your contention is that the three-year limitations period was agreed upon as a matter of contract. A matter of contract. Provision in this policy. And that the three years begins to run at the expiration of the time period in which a request for reimbursement must be submitted. Is that the date that triggers the three years in your view? Or is it three years from a communication denying a claim for benefits? It's two-pronged. It's three years from the date a request for reimbursement must be submitted for out-of-network claims that are submitted. It is three years from the date of a final decision for all other types of claims. So some claims are in-network and the medical provider submits the claim themselves. So I think counsel said a few minutes ago that out-of-network claims were not in dispute here. You agree with that? I don't know that any claims are in dispute here any longer. But yes, I do agree with that. So then that leaves the operative triggering date for the three years, the date of denial? Correct. And you say that is April the 4th, 1998? 2008. And this lawsuit was filed approximately four years and five months after? Was I correct? April the 4th? April 4th, yes. And so you're saying her claims to the extent that they do exist fall into the second part of any other reason. If you file legal acts against us for any other reason. That's correct. At the time we filed the brief, we thought there were out-of-network claims that were submitted. As things developed further, we understood there to be other claims. We did refer to both provisions of the statute of limitations. And that's where it says within three years of the date, we notified you of our final decision? Yes. Didn't Judge Jarvie focus on the other triggering date? He did not. I mean, I thought in his order, granting summary judgment, he quotes this language that if you want to bring a legal action against us, you must do so within three years from the expiration of the time period in which a request for reimbursement must be submitted. That's correct. He focused on that. As I read that, that looks to be the language that he focused upon rather than the date of denial. That's correct. That's absolutely correct. So is that wrong? At the time, we weren't even sure. We believed those to be the only claims at issue. So I don't know that was wrong. It's right as to certain claims, but to the extent she has other claims, which I believe she's making here today, that triggers the other reason claim? That would trigger the second prong of the statute of limitation claim. But the only claims that exist are the claims for extra contractual damages, because there are no risk of benefit claims left, according to the statute. Which is the first clause. I'm sorry? Which is the first clause. Well, no. Any other risk of benefit claims for network providers, if they existed, would be the second clause. But they don't exist any longer. If there are valid extra contractual claims, their statute of limitations would not be limited by the contractual limitation in the ERISA policy, correct? I don't agree with that, because the policy says, if you want to sue us for any other reason. If she is asserting claims that are not based upon the ERISA plan, like the state law claims, you cannot turn to the contractual limitation in that policy to limit her statute of limitation to three years. She has a 10-year statute of limitation on those claims, doesn't she? If there are. She only has them if the extra contractual claims were unrelated to the ERISA plan. If they are not preempted by the ERISA plan. If they're not. They're alive and well. If they're alive and well, and they're unrelated to the ERISA plan. Here, they all are premised on the existence of the ERISA plan. Count one is for breach of contract, counts for negligence, bad faith, all incorporate the ERISA plan into them and rely on the factual basis of the ERISA claim. So, under United Supreme Court precedents, they relate to the ERISA plan. And therefore, they all fall under the same statute of limitations. I think maybe, my view is that you may be reading those cases a little too broadly, but go ahead. Well, they all indicate that ERISA preemption is to be construed extremely broadly. Time's expired, thank you. Thank you. Ms. Simpson, how much time does Ms. Rudolph has? She has three minutes, Your Honor. Okay, thank you. Ms. Simpson. Thank you, Your Honor. No one but me had their coverage terminated. The other insurance contracts UnitedHealthcare wrote for the employees and the other shareholders in my firm went on uninterrupted. I'm the only one who was terminated. UnitedHealthcare, remember, said that we weren't parties to a contract at all. That's what gives rise to my claims. But now they want to bind me to a term within that contract. You asked, did I ever bring up the substance of that supposed denial in April of 2008? I most certainly did. It's in the last section of my brief. Here's what else happened in April of 2008. That's when UnitedHealthcare finally told me why they had terminated us. According to UnitedHealthcare, I had applied for coverage using an incorrect social security number. Now, of course, this made no sense because for three and a half years, my claims had been paid and they were submitted by my providers who had my correct social security number, which clearly had to match what was being used internally at UnitedHealthcare. But in October of 2007, they said, oh, no, you submitted an application under a false social security number. And then five years later, in March of 2013, UnitedHealthcare served their initial disclosures. And in them, page 227 of the appendix, is the supposed application of mine. And indeed, the social security number on that application is not mine. The handwriting is not mine. The last two digits of my social security number are not fives. They don't look anything like fives. But that is not the application I submitted. It was created later. Well, do I understand you to say, on the one hand, they say, you don't have a contract with us. You've never had a contract with us because of this false social security number. Yeah. And now, when you sue them for the state law causes of action, they want to use the limitation in the contract that they said you didn't have with them to limit your statute of limitations to three years. That's exactly what they're doing. And it's just like ERISA, Your Honor. ERISA was never an issue. They didn't consider themselves bound by ERISA in dealing with me. They never gave me notice at all that they had terminated my contract. Never. They certainly didn't give the kind of notice that ERISA requires plan participants to give. But then, when I sue them, all of a sudden, my claims are ERISA preempted. Here's the difference between a wholesale declination of coverage and a denial of benefits and how it impacted my family. Remember, in the beginning, I said, on June 1st of 2008, I secured coverage with another carrier. That was Walmart, Blue Cross Blue Shield of Iowa. That was in June of 08. In September of 08, my husband's cancer was back. And when the bill started coming into Walmart, they initially denied payment for Jay's Cancer Care under their pre-existing condition exclusion, which required us to have continuous coverage for Jay's Cancer Care in the 12 months preceding the start date of my policy with Walmart. And according to the information UnitedHealthcare gave them, we had not had coverage at all. But your whole lawsuit is premised upon the contention that there was a contract. Well, I insisted there was a contract. I paid my premiums every month. So with that, since you've taken that position, aren't you bound then by the limitations language in the contract? I am not, because my claims arise out of their determination that there wasn't a contract by their breach of our relationship and their continued acceptance of premium. Look at it the other way. If I had failed to pay premium, they would have been entitled to terminate my coverage. And that would be- Well, your time's up. Let me just ask you quick. Yeah. But without a contract, do you have any claims? I mean, without a contract, they had no obligation to pay you. Well, yes, they did. I paid my premiums every month. Well, I know. You paid a premium on a policy contract. Well, but that's still, let's say there wasn't a written contract. If I go to UnitedHealthcare, even though it's required to be in writing in Iowa, but I say, I'm going to give you $10,000 a year in premium dollars, which, by the way, was what I paid. And in exchange for that, I want you to cover my family. And they say, OK. I mean, that was the essence of our relationship. Now, in those early years, of course, our claims were maybe one-tenth of what I paid in premium. But in those last years, our claims went from hundreds of dollars to hundreds of thousands of dollars. OK. I'm sorry. You're arguing, as I hear you, that the limitations is applicable for breach of contract cases involving benefits. Correct. But your case is not involving benefits at this point. It's a breach of contract that you paid for a contract that they denied. That is exactly it. And you say the three-year statute in the policy doesn't apply to that kind of a suit. Is that your argument? That is my argument. And then to address the question that you all raised, did I, in my briefing, address this? They never gave me a denial. So therefore, the time really hasn't started to run. I did address that in there. And I'm sorry, that email from April of 2008, even if UnitedHealthcare had done what they didn't, that is not an ERISA or any otherwise compliant notice of a termination of coverage. It certainly would not be statutorily approved in Iowa under either Iowa Code Chapter 514a or 515. OK. We understand your argument. Thank you. Thank you very much. I think we'll take about a five to ten minute recess.